v. Parker-Hannifin Mr. Hutz, good morning, welcome Please proceed Thank you, Your Honor. May it please the court Based on the evidence before the district court, a reasonable jury could have and likely will find that Parker's arguments with regard to obviousness should be sustained and the patent to Omegaflex held invalid Thus, it was error for the district court to find Omegaflex's patents to be non-obvious on summary judgment Parker was entitled to its day in court, which was denied by the decision The district court, in its summary judgment motion, misapplied the legal standard of obviousness It's not a summary judgment opinion, it's not a motion I'm sorry, Your Honor The parties filed the motion The parties filed the motion, and there was a decision, and it was against Parker, which it should not have been The district court misapplied the law, the legal standard of obviousness We don't much care about that at this point, do we? Because it's enough overview anyway So the question is whether the record sustains the grand summary judgment That is correct. What I have with the record is that your expert didn't really do a very good job of saying why there wouldn't be motivation to combine these references He did say there were a lot of references out there that showed sleeves, but he didn't really talk much about the advantages of using a sleeve I think, Your Honor, that I would respectfully disagree with that I believe that Mr. Geary, in the appendix of pages 8, 9, 7, 7, to 8, 2, has a very extensive discussion Well, what? Show me where he talked about the advantages About the advantages? He said it's common, he said it's common to use a locating sleeve But I didn't see that he said much about the advantages of using a locating sleeve Or why that would be a motive for lack of motivation Your Honor, there is really only one advantage of the locating sleeve And that is to assist in those circumstances where alignment between the fitting and the tubing is difficult to achieve And what Mr. Geary has said and has referenced at least seven patents in the prior art as well as three products Is that in those instances in which the prior art with fittings and tubing ran into alignment problems They used a locating sleeve So where did he say there were alignment problems here, so someone would have been motivated to use a locating sleeve? What he indicated very clearly Did he say that? Did he say it wasn't skilled in the art? He said, did he say there were alignment problems here, the art teaches, the prior art teaches That when alignment problems use a locating sleeve, therefore it's obvious I don't see that he quite made that connection But maybe I'm missing something Your Honor, this is I think he did make that connection Because what he said basically I mean In that portion of the We've got to go with the record Yes, I understand that In his discussion of obviousness at page A977-82 He talks about the fact that if you run into an alignment problem And he cited patent after patent and product after product where there was an alignment problem encountered Then you would use a locating sleeve Where's the alignment here? 977, Your Honor, is where I believe Mr. Hewitt, this is a portion of his expert report Right And he says, for example, at the bottom of A977 The motivation exists from the prior art to add a tube support or locating sleeve to the tube fitting And there would be a reasonable expectation of success Yes, but that's not quite the same thing as saying Where there's an alignment problem The prior art teaches you to use it And there's an alignment problem here That's a summary of the problem But, Your Honor, he goes on and he talks about all of these patents that you see On the next several pages, including the products And what he is basically saying And we can use the Parker-Hanifin compression fitting as perhaps the best illustration That fitting came with an optional locating sleeve The customer could buy the fitting And if the customer did not feel there would be an alignment problem If the customer didn't think that would be anticipated under certain circumstances The customer purchased the fitting without the sleeve On the other hand, if the customer felt there would be or might be an alignment problem The optional locating sleeve was available The customer could pay for it, take it home, insert it into the fitting So you have basically two options Option one The problem is that's you saying that We have to look to see what the experts say That's Mr. Geary saying that That's Mr. Moner saying that That's the court finding it in the district court And it's admitted to by OmegaFlex in its briefs That the Parker compression fitting Taught a locating sleeve to use in those situations where alignment was a problem Okay, so where does he say that alignment is a problem here? That's the whole purpose, Your Honor, of utilizing the locating sleeve Are you saying where does Sweeney itself, the patent that teaches all the elements Where does their expert say there was an alignment problem here So there was a motivation to use a locating sleeve It's just not a well-drafted affidavit either Well, Your Honor, I apologize for it not being well-drafted But I would respectfully submit it is more than sufficient for a reasonable jury To conclude that Parker's position is correct And that the district court should not have resolved the issue of motivation And likelihood of success in the confines of a summary judgment motion It may be insufficient for purposes at trial We don't know that But most assuredly for purposes of a summary judgment And defeating a summary judgment The expert has set forth in great detail the prior art The prior art optional use of locating sleeves The nature of the problem which was confronting the art And the art knew generally that alignment with all kinds of different fittings Could pose a problem The universe of solutions to that problem was very small It was basically one Use a locating sleeve When you use the locating sleeve You solve the problem Option two, if you will Provided by the Parker compression fitting Judge, I'd like to ask you three times a question Ending with the word here Meaning in the circumstance of this use Is there an expectation you're going to have alignment problems or not? And the witness didn't seem to speak to it I think, Your Honor, he did In the sense, at the minimum Of showing multiple different fixtures And multiple different circumstances In which alignment was a problem Or perceived to be a problem There is no reason to think that the Sweeney coupling, if you will Or fitting, which happened to be option one, if you will Or option A of Parker compression Don't use it There's no reason to believe that the structure of that Sweeney fitting Was any different than what the prior art fully understood And understood the problem existing in all kinds of other fittings Sweeney never made... But the problem doesn't come from the fitting or the tubing The problem comes from the surrounding circumstances Where crowding makes it difficult to align the two parts Without the aid of the sleeve Correct So it has nothing to do with the nature of the tubing Or the use of the tubing Or what kind of material goes through the tube Or exactly how the fitting operates It all has to do with the external environment So I'm looking for some indication that the external environment Anticipated in this application of the technology Included the sort of crowding that creates alignment problems Because you have... This whole tubing is intended, and the fitting To be used for installation within a house You can visualize... So you're saying it's inherent in many houses Not all houses, but many houses That there are going to be such crowded circumstances That there will be difficulty achieving proper alignment Without the aid of... Yes, and the art knows that, Your Honor Because visualize the fact that it may be in the dark It may be overhead where you can't see it And what you're basically trying to do is take the tubing And you're trying to put it into the fitting You're doing a good job Your Honor, I think it was I think it was sufficiently in the expert report I mean, obviously, we can always draft things differently At a later time The point is, this is not just... Did the expert report effectively incorporate By reference the entire patent document So the prior patents that the expert discussed The patents themselves were, yes If that's what you're asking Yes, yes So your argument could be Well, you don't just look at what he said You look at the underlying documents On which he was basing his opinion We would certainly say that, Your Honor But if we look at the decision by the district court The district court acknowledges Number one, the Sweeney patent Teaches everything but the locating scheme And number two, acknowledges that The Parker compression fit as an illustration Teaches the optional use of a locating sleeve If you've got a problem Or you anticipate a problem You use it, option one If you don't think you're going to have the problem You save the expense And you don't buy it, option number two The Sweeney patent Didn't specifically mention a locating sleeve It did mention the need for a coaxial orientation Okay, let's save your rebuttal time And hear from Mr. Coyle One response, please Yes In fact, in the real world You plan to put out a product That didn't have a locating sleeve It wasn't obvious to them to put it on And then they had a product recall That just cuts against it being so obvious It may cut against it, Your Honor They first of all made four or five other modifications Besides the locating sleeves But second of all, they went with option A As I said, no locating sleeve They found that there was a problem They therefore took option B Taught by the prior, recognized by the prior If you run into the problem Use a locating sleeve That is the issue on the obvious side I think it goes out to the field And having to recall that That's a major problem So they must not have anticipated the problem Until they got the rejection of other customers That may be, Your Honor In the sense of this specific fitting And this specific geometry That they did not anticipate that it would work Without an aligning problem In all circumstances They found there were circumstances Where that occurred Just as the prior art had found that In other instances And had solved it in exactly the same manner There's no new or unexpected result obtained here The locating sleeve functions in precisely the same manner As it does in the prior art The nature of the problem And the knowledge of the art Teaches us that such a problem exists With a multitude of fittings And the fact that Sweeney did not specifically state That it might have an aligning problem Does not disqualify it as prior art For use in motivation Or reasonable likelihood of success The motivation came from what the artisans otherwise know Not from anything Sweeney teaches That's exactly correct, Your Honor But if you look at the logic of the district court At A26 to 27 The district court disqualified Sweeney as motivation Because they said Sweeney didn't admit to the problem Our answer is Sweeney doesn't have to Because as this court has said many, many times The motivation for the combination Doesn't have to come from a specific reference It can come from the nature of the problem And the art in general And our expert set forth in great detail What that was Now, as I said, this is a motion for summary judgment It never should have been decided on summary judgment We should have our day in court Very well, Mr. Coyle Thank you, Your Honor. Good morning Your Honor, Judge Ponser's decision should be affirmed Because it will be based on the correct statement of the law As it presently exists regarding obviousness Judge Ponser correctly applied that law To the undisputed facts of record But you agreed there are multiple references That show locating sleeves, right? In reality, there are multiple references That do locate sleeves So why is it so unusual That one is confronted with an alignment problem And uses locating sleeves? Well, your question presupposes the answer, Your Honor When one is confronted with the alignment problem But not all those prior teachings Suggest that one is often Not always, but often Confronted with an alignment problem And therefore It can be anticipated At least in many situations And therefore you want to provide for it And everybody knows the way you do that is with the sleeve I think there's two specific responses to that, Your Honor First is it would be a mistake to also Leap to any conclusions here That all other fittings included Locating sleeves or tube supports In fact, that's not true In the particular prior art I'm not suggesting that every product Every fitting or every tube Came with a sleeve I was suggesting that the prior art Patents and products That do include or mention a sleeve Suggest that often A sleeve is needed because Often the environment is cramped enough That there's an alignment problem Yes, Your Honor, and the point I was trying to get to Is that if you look at the prior art That specifically was used In terms of fittings for these CSST systems Prior art that's discussed, for example In the background of the art section Of the patent suit There were several versions of fittings Used in this exact field None of which had locating sleeves They obviously aligned in some way Because they made a leak-tight seal So they aligned without A locating sleeve So no, the person who was filling the art At the time of this invention Would not have inherently thought Well, you must put a locating sleeve in here To solve alignment And in fact, I believe there may have been a statement Made a minute ago that the universe of solutions For alignment is a single one, not a locating sleeve That can't possibly be true Because there were fittings that made Leak-tight seals in the CSST field Without locating sleeves They achieved alignment in some other way Your Honor Wrote in the Dicefile case Citing to Kotzeb That in an obviousness analysis It's required to cast the mind back To the person still In the ordinary skill in the art In his workshop Respectfully, Your Honor, I believe he made it Because at the time of the invention The ordinary skilled artisan in the workshop Would have in his possession The Sweeney pattern And the lone piece of prior art That was discussed in any detail in any of the pleadings below Which is the Parker compression fitting Everybody knew about locating sleeves, right? And let's accept that And even with that being the case When you have the Sweeney pattern There's absolutely no dispute That Sweeney teaches a fitting that makes a leak-tight seal And I also would caution the Court It can make a leak-tight seal It may depend on the environment In which it's attempted Parker's experts Parker's experts Testify that the purpose of the fitting Is to make a leak-tight seal This is for the conveyance of natural gas The purpose of any fitting Is to make a leak-tight seal Parker's experts specifically said It would be a poor design choice to ever Make a fitting that didn't make a leak-tight seal They have to work all the time And the Sweeney pattern Teaches a fitting that makes a leak-tight seal And it accomplished it With a collet device So the question becomes The ordinarily skilled artisan In his workshop With however many fittings you want That use locating sleeves on the one hand And Sweeney Why would they be motivated in any way To take the sleeves of these fittings Which serve an alignment purpose If you accept that And add them into the Sweeney device Which already purports to make sufficient alignment That it effectuates the leak-tight seal The experts in the case Also all agreed that As a basic principle of mechanical engineering It's a convention One would not add an unnecessary component To a device That's cost the device a complexity I don't know why we can't agree That sometimes a sleeve or it's equivalent Is needed and lots of other times It's not needed I guess your honor you can't be a little bit pregnant These fittings are for Conveying natural gas If these fittings leak Under any circumstances I mean they're not just installed in the best of circumstances If they leak As one of Parker's witnesses John Fox said Catastrophic results can occur No one can question that the leak-proof nature Of the fitting And the quality of the seal Is very important No one's arguing that it's not important Even if something less volatile than natural gas Is in the tubing The question is whether It's understood in the art That you may have Circumstances that will create Alignment problems that require a sleeve And the answer to that Your honor is if you're armed with The Sweeney fitting in your Packet in your hand Which tells you that this Fitting will make a leak-tight seal By virtue of this novel Collet element Then you have everything that you need It doesn't say some of the time it makes a fitting In fact the Sweeney patent Specifically references And I direct your attention To A747 And A748 3-47-49 5-44-48 Of the Sweeney patent Specifically talks about Making a fluid-tight seal Or leak-tight seal Or connection What this tells me Is that it's incredibly correct On what you're arguing That anytime Somebody in the past Used screws And somebody else comes in And says I'm going to use a ribbon It works better And suddenly that becomes a patentable invention This just would make Almost any application Of a commonly used feature In a different context patentable Your honor our patent is not directed To just a fitting with a locating But that's the only thing that's new About it. Everybody agrees That the sleeve is the only thing that's new Everybody agrees that sleeves were commonly used So what you're taking Is a commonly used feature And including it in here and suddenly saying Okay we've got a patent Well respectfully your honor the novelty of the inventions here Is not simply a locating So even nobody's claiming that Omega Flex Invented a locating sleeve But you're saying that the only thing That wasn't in the Sweeney patent Was a locating sleeve And that's what makes this patentable So you're claiming the right to take A commonly understood Used feature And to create a patentable invention By using that In some new context That seems to me an argument Of extraordinary breadth Your honor It's certainly not unusual For patentable inventions To consist of a combination of elements That existed in the prior art And here what is novel Is that Mr. Albino The inventor of the patents that Omega Flex Possesses Combined features Combined both a collet and a locating sleeve To arrive at an invention That in fact satisfied a long Felt industry need of a fitting That could effectuate a leak tight Metal to metal seal without needing Any other flare tool or any other Steps in the installation Process There's compelling secondary Considerations to this matter Directly to that point Would you not be able to argue that Yes your honor I appreciate that But the question Still remains If it was so obvious to do Why then Did the person of ordinary skill in the art Who was in fact setting about to solve The same problem A fitting that could be installed more quickly And made a leak tight metal to metal seal Not appreciate The need to put the locating sleeve Into this device and as a result of that As a result of that Commercialized a product That needed to be recalled They're trying to save money So they Introduced leaking Gaskets into the field With all due respect your honor I appreciate they may have been trying to save some money But I don't certainly ascribe to Parker Hanifin an intention to release Gaskets that would be put into homes That would leak Well you have to agree your honor That the ultimate issue of whether At a trial It would be proven obvious or not Is not what's before this panel What happened was There was a grant of summary judgment Of non-artists The only issue before the panel Is whether on the evidentiary record Accompanying the summary judgment motion Genuine issues Of material fact were raised By the non-movement's evidence Warranting a trial Yes your honor And you're saying it's so clear That it's not obvious that the trial Is not necessary, not appropriate I'm saying your honor that the district court Correctly found that Parker Hanifin Failed to raise material issues of fact From which Parker Hanifin could prove by clear And convincing evidence That the Omega Flux patents are obvious And your honor Your honor Very aptly noted Earlier that there's simply A lack of explanation Coming from Parker Hanifin's Experts as to exactly Why this combination would be made And simply saying that it exists In the world That there are two supports Isn't enough To get To a material issue of fact As to the obviousness Why is it inherent In installing a gas pipe In residences That there will often be Difficult circumstances That will require Some kind of special aid To make the alignment Of the fitting in the tube It may be known That the circumstances Of the installation would require Either overhead or behind a Appliance type of scenario But that doesn't mean That the sole solution to that Is the locating sluice It doesn't have to be the sole solution It just has to be the conventional solution It wasn't the conventional solution in that field And again I just direct your honors To the background of the art section of the patent Which talks about prior art fittings In this exact application Which is the exact application that Sweeney is devoted to So you've got Ten years of this industry Where fittings are being employed Without locating sluice And they're making seals And then you've got the Sweeney patent That comes along and says Yeah, we're an improvement here We can get rid of those Pesty flare tools That slow up the process Because we've got this nifty collet thing And we still make the leak tight seal And that's all that The person of ordinary skill In the art is charged with knowing At the time of the invention Certainly I would concede For purposes of summary judgment That the person of skill in the art Would also know that there are fittings That use locating sluice But the person of ordinary skill in the art I don't understand the fitting To be the determinant Of whether you need a locating sluice Nor the tubing Now maybe you're just confused But I understand that it's the environment In which you're assembling fittings Into tube sections That's what creates The need for Assistance in doing proper alignment That has nothing to do with The shape of the fitting or the shape of the pipe It has to do with the environment In which you're trying to assemble the fitting Into the pipe end Isn't that right? Sure you are, that's correct And if you are a person of skill Then why doesn't the residential Installation environment answer the question? Because fittings have been In that environment for years without locating sluice The person of skill in the art Again, standing in his workshop With that knowledge Plus the Sweeney fitting Would not have any motivation to add A locating sluice to the Sweeney fitting There would be no reason to think That proper alignment Couldn't be achieved Without a locating sluice Or that the Sweeney fitting Would lead to a problem With sealing And it's also very important to remember Chronologically, at the time of the invention While the Sweeney patent existed And the person of skill in the art Would be charged with its knowledge At the time of the invention The commercial environment of that Had not yet hit the market There was no knowledge at that time That that device would ultimately Fail to the point of recall So all the skilled artisan has Is the Sweeney patent itself Which Parker's experts agree Claims to be sufficient For its intended purpose Which is making a leak-tight seal And inherently A patent directed To a fitting for use In the CSST Systems and residential Environments Inherently would have to be Claiming satisfactorily Makes the seal In that environment It would completely defy logic To conclude that it's telling The artisan that it may or may not Make a seal Why is it sort of like saying Well, in the past Benches and corks have always been glued together And somebody Maybe mentioned that They also had screws to them That they could stand up better Would that be patent? I don't know, your honor I can say this The problem here is that We have an invention that At least on the surface perhaps appears simple But simplicity isn't really The guidepost In this analysis And in fact the problem with simplicity Is that it probably lends itself Even more dangerously to the temptation Of hindsight reasoning And I'm afraid that that's what Parker has fallen into here In retrospect Mr. Hudson's arguing foresight Not hindsight He's saying it was already known That you were going to likely encounter these problems And therefore you provide for them By using the long Known sleeve technique And in very brief Your honor as my time has expired I would submit that The fact that Other things may exist in the art That included locating sleeves That were used for totally different applications Does not provide that foresight Well that's the issue Thank you Mr. Hudson you have a couple minutes left for a vote Thank you your honor As usual your honor Mr. Coyle For Omega is very articulate He's got a lot of arguments And he should be able to make those arguments to the jury The problem is we're here on summary judgment We don't have a jury We weren't given the opportunity for a jury Instead the judge Resolved material facts regarding motivation And likelihood of success They were disputed We need a trial here The Sweeney patent does not stand alone Which is one of the things that Omega Flex errors might lead Alignment problems And fittings in general Were known to exist We have seven patents We have three commercial products We have one specific product Which teaches the optional use It is not unique I think At the core of Mr. Coyle's argument Is that well those are all In other applications In this particular Part of the art Fittings with Sweeney Weren't conventional Your honor the Sweeney patent Was the first to teach the use Of a Collet to connect To make a metal to metal seal A prior art that he's referring to They used gaskets And they used flaring tools And it may be that in those fittings It wasn't as important The fact of the matter is That Sweeney teaches Each and every limitation Including the metal to metal And the tool-less aspect of the fitting As is found in the Omega Flex product And the issue is Would it have been obvious To utilize the locating sleeve That solves exactly the same problem In exactly the same way And it functions in precisely the same Physical manner The locating sleeve engages the inside of the tube And assists it in coming together That is the issue There are multiple issues in fact Not only on the motivation But the likelihood of success As well as the secondary considerations Those matters have to be tried Before the jury at the minimum And it is for that reason That we believe Reversal is essential here All right, we thank both counsel Very clearly argued We'll take the appeal under the platform All rise